BEISTLE *v.* McCONNELL.

1. FIRE INSURANCE—ACTION ON POLICY—INTEREST OF MORTGAGEE
   —AGREEMENT.

> Suit having been brought by the assured on a fire-insurance
> policy, a parol agreement for a division of the judgment was
> made before trial between plaintiff and a mortgagee to whom
> the policy was payable as his interest might appear. *Held*,
> that the agreement did not create simply the relation of
> debtor and creditor between the owner and the mortgagee,
> but impressed the judgment with an equitable trust in favor
> of the mortgagee.

2. SAME—CONSIDERATION.

> The employment of assistant counsel, payment of the jury
> fee, and giving bond for security for costs by the mortgagee
> was a sufficient consideration for the agreement.

3. SAME—RIGHT OF MORTGAGEE TO PROCEEDS—LIABILITY OF AT-
   TORNEY—ACCOUNTING.

> The amount of the judgment having been paid to plaintiff's
> attorney, who had full notice of the mortgagee's rights, it
> was his duty to retain so much of the money as would satisfy
> the mortgagee's demand, and he not having done so, a bill
> was properly filed by the mortgagee against plaintiff and his
> attorney for an accounting.

Appeal from Berrien; Carr, J. Submitted June 22,
1905. (Docket No. 52.) Decided September 28, 1905.

Bill by John W. Beistle against James McConnell and
Alvah P. Cady, William H. Andrews and George H.
Murdoch, Jr., copartners as Cady, Andrews & Murdoch,
for an accounting. From a decree for complainant, de-
fendants appeal. Affirmed.

*Lawrence C. Fyfe*, for complainant.

*Cady & Andrews* (*George W. Bridgman*, of counsel),
for defendants.

MONTGOMERY, J. Ella Simmons, being the owner of a

lot in Buchanan, Mich., on which stood a house and barn, on the 21st of September, 1894, mortgaged the same to the complainant for $334. On March 29, 1898, Ella Simmons conveyed her interest by warranty deed to defendant Mc-Connell, he paying on the purchase price $50. The full purchase price was $650. The complainant's mortgage, being of record, continued a lien on the land in the hands of McConnell. This fact he recognized, and on the 8th day of April, 1898, he procured a policy of insurance in the Northwestern National.in the sum of $800, $500 of which was placed on the dwelling house, $100 on the barn, and $200 on household furniture. The policy was "payable to John W. Beistle, mortgagee, as his interest may appear."

In June, 1898, complainant commenced foreclosure of his mortgage by advertisement. · A sale took place on September 3, 1898, which became effective to cut off the equity of redemption on September 3, 1899. In the meantime, and in July, 1899, a fire occurred, consuming the dwelling house and its contents. The barn was not burned. The insurance company refused to pay the loss. A suit was instituted in the name of defendant McConnell as plaintiff; the defendants Cady, Andrews & Murdoch being attorneys of record. A recovery was had in the sum of $763.39, which with interest and costs was afterwards paid into the hands of the clerk of the court and by him turned over to Cady, Andrews & Murdoch.

While the funds were in their hands, complainant demanded that the proportion thereof due him be paid him, or that the funds be held by Cady, Andrews & Murdoch until he could confer with counsel as to his rights. Ignoring this request, the money was paid to defendant McConnell upon the latter's demand. This bill is filed for an accounting and to compel the payment of the money to complainant. From a decree in favor of complainant, defendants appeal.

The complainant's testimony tends to show that after the loss by fire he and the defendant McConnell consulted

one or two attorneys relative to an action on the policy, but that defendant McConnell afterwards, acting independently, employed the defendant attorneys in the first instance.  Complainant's testimony, however, shows that later on he consulted with defendant Andrews, and that it was agreed that complainant should employ Mr. James O'Hara to assist at the trial, and that he did assist; that Andrews advised that the policy protected the complainant; that he (complainant) became security for costs and paid the jury fee; and, also, that it was fully agreed before the trial was entered upon that, if a judgment was recovered, complainant was to receive the amount his due, his interest in the mortgage, and that Andrews was to see it paid out of the recovery.

The testimony of the defendants differs from this in some particulars.  Andrews denies having been employed by complainant at any time; but this does appear by his testimony:  *First,* Mr. O'Hara was employed by the complainant and assisted on the trial; *second,* before the trial commenced Mr. O'Hara insisted that before the trial commence there be an understanding; *third,* that there was an agreement, and his version of it is as follows:

"So they agreed there.  I give you this as I understand the agreement.  Mr. O'Hara said the house and lot were worth $150—that is what Mr. Beistle had told him—or the barn and lot, after the fire, and he said, ' Well, if we get a judgment, we will add that into the judgment and divide the amount.'  And I don't know whether I said anything or not, unless I said it seemed to me that it was an equitable arrangement.

" *Q.* What was the substance of it ?  What did McConnell say, if anything ?

" *A.* Well, that was McConnell's proposition; that they divide the proceeds in case the suit was won.

" *The Court:* Divide the judgment ?

" *A.* To add this $150, the value of the lot, to the amount recovered, and then divide it.

" *Q.* You mean the amount of insurance on the house, or altogether ?

" *A.* Altogether.  I might say here there was some

talk there about the $150, the lot and the barn being worth $150, and Mr. McConnell's $200 on the personal property, and that they would divide the whole thing—just offset one of those against the other.

" *Q.* But there was no absolute arrangement made as to how the thing should be divided?

" *A.* There was a general understanding that was to be the division. That is my remembrance of it."

The defendants seem to have construed this agreement as one creating simply the relation of creditor and debtor between complainant and defendant McConnell. We do not so find the facts. We are fully satisfied that the parties intended to provide for a division of the fund recovered, and that it is manifest, and must have been manifest from the first, to Mr. Andrews, that the purpose was to prevent this fund going into the hands of defendant McConnell. If there was doubt about this in his mind at the time, he had ample notice of complainant's claim in that regard before the money was paid over to McConnell. Under these circumstances he could not relieve himself or his firm by turning the money over to McConnell. *Sims* v. *Brown*, 6 Thomp. & C. (N. Y.) 5; *Peyser* v. *Wilcox*, 64 How. Prac. (N. Y.) 525. As shown by these cases, Andrews, as attorney, was not bound to yield to the demand of McConnell without indemnity. It was open to him to file a bill of interpleader, if deemed necessary for his protection. The record shows that, instead of doing this, he stated to the complainant in McConnell's presence that he would have to pay the money over to McConnell on demand. It is needless to say the demand " followed hard upon."

It is argued by the defendants that the complainant never acquired any interest in this insurance. But the law is not so. If it be conceded that the owner of the equity, who is the insured named in the policy, is the proper party to maintain an action on the policy, it does not follow that the mortgagee has no equitable interest in the fund. Ostrander on Fire Insurance, pp. 354, 355. This question is unimportant in this case, however, as we

find there was an express agreement to divide this fund, and that there was a consideration for this agreement in the services of Mr. O'Hara, furnished and paid for by complainant.

We think this judgment was impressed with an equitable trust in favor of complainant, which was not diverted by the money finding its way into the hands of defendants Cady, Andrews & Murdoch, that on notice of complainant it was their duty to retain so much of the money as would satisfy their demand, and that this bill was properly filed to have a trust declared and for an accounting. The decree was sufficiently favorable to defendants. The case is one of some hardship to defendants. No fraud is charged, but we are constrained to hold that defendant Andrews did not regard the rights of complainant and failed to protect him.

The decree is affirmed, with costs.

McAlvay, Blair, Ostrander, and Hooker, JJ., concurred.